# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| EDWIN ORTIZ, | ) | CASE NO. 1:09 CV 2166 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | MAGISTRATE JUDGE VECCHIARELLI |
| MICHAEL J. ASTRUE, Commissioner of Social Security | ) ) ) | |
| Defendant. | ) ) | **MEMORANDUM OPINION AND ORDER** |

Plaintiff Edwin Ortiz challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying his claim for Disability Insurance Benefits ("DIB") under the Social Security Act, 42 U.S.C. §§ 1381 *et seq.* This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to the consent of the parties entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the Court **VACATES and REMANDS the final decision of the Commissioner for proceedings consistent with this Order.**

## I. PROCEDURAL HISTORY

On April 28, 2006 Plaintiff applied for DIB.  The Commissioner denies Plaintiff's application initially and upon reconsideration.  On October 20, 2008, Administrative Law Judge ("ALJ") Irving A. Pianan held a hearing regarding Plaintiff's claim.

On December 11, 2008, the ALJ denied Plaintiff's disability claim.  This decision became the final decision of the Commissioner when the Appeals Council denied further review.  Plaintiff filed an appeal to this Court.  On appeal, Plaintiff claims the ALJ's decision is not supported by substantial evidence.

## II. FACTUAL BACKGROUND

### A. Vocational Background

Plaintiff was 32 years old on the date of the ALJ's decision (Tr. 14, 16).  He had a high school education and past relevant work experience as a maintenance technician at a janitorial maintenance company (which was medium to heavy work) (Tr. 14, 188-89).

### B. State Agency Contact With Plaintiff

On July 13, 2006, Plaintiff was contacted by the state agency (Tr. 162). He reported that he still had some leg pain as a result of a fracture five years earlier (Tr. 162).  However, he reported that he could stand and walk "without any problems," and that he has taken some pain medication which has helped (Tr. 162).  He also reported that he could not run, but could go up and down stairs, ladders, and rope very slowly (Tr. 162).  He reported doing light housework and that he was not involved in any kind of exercise program (Tr. 162).

On March 13, 2007, the state agency contacted Plaintiff again (Tr. 175). Plaintiff indicated that he was willing to undergo an independent examination (Tr. 175). He reported that he was still using a cane for balance and that without the cane he could only walk a short distance (Tr. 175). He reported that his leg would hurt if he walked long distances and that it would hurt more if he did not have his cane (Tr. 175). He also reported having pain going up stairs and that it affected his ability to drive so that he only drove short distances (Tr. 175).

**C.     Medical Evidence**

The record shows that approximately six years prior to his alleged disability onset date, in 2000, Plaintiff fell from a ladder and fractured his right tibia and fibula (Tr. 208). His fracture was treated by surgically installing an external fixator for eight months, followed by some physical therapy (Tr. 208). After this initial treatment, Plaintiff had no treatment for three years.

In August 2004, Plaintiff saw Jeffrey A. Brodsky, D.O. with complaints of numbness and stiffness in his ankle and increased difficulty with activities (Tr. 208). Upon exam, Dr. Brodsky found Plaintiff to have good range of motion in his knee and ankle and minimal swelling and tenderness (Tr. 208). His impression was that his fractures were well-healed, but that Plaintiff had deconditioning of his right lower leg (Tr. 208). Dr. Brodsky advised Plaintiff to start physical therapy (Tr. 208).

One month later, Plaintiff reported that he did not do well with physical therapy (Tr. 208). As such, Dr. Brodsky ordered a CT scan of his ankle, which showed no significant pathology (Tr. 208).

In November 2004, Dr. Brodsky found that Plaintiff's condition was "as good as

he's going to get"and offered to assist Plaintiff in getting a second opinion, which Plaintiff declined (Tr. 209).

Plaintiff returned to see Dr. Brodsky in June 2005 and in April 2006 (one month after his alleged disability onset date), where he complained of ongoing problems with his right leg and that, as a result, he had difficulty watching his children (five year old and seven year old) while his wife worked (Tr. 209).  Dr. Brodsky gave Plaintiff a note to participate in daycare for his children (Tr. 209).

Four months before his alleged disability onset date, in December 2005, Plaintiff saw Michael A. Retino, D.O., for a second opinion regarding his right leg and ankle pain (Tr. 241). Upon examination, Dr. Retino noted that Plaintiff's knee exam was normal (Tr. 241).  While Plaintiff had general achiness and tenderness upon palpation of his ankle, he had good ankle motion and no signs of instability (Tr. 241).  His recent x-rays showed a well-healed tibia/fibula fracture and his CT scan was negative for any ankle or foot abnormalities (Tr. 241). He advised Plaintiff that he could not help him with his general aches and pains and recommended that he obtain a bone scan to rule out chronic osteomyelitis (bone infection) (Tr. 242).

One week later, Plaintiff saw Roger G. Wilber, M.D., for a consultative evaluation of his leg pain and, in particular, for consideration of whether he had osteomyelitis (Tr. 243).  Plaintiff reported that he was not taking any medications (Tr. 244).  Dr. Wilber reviewed Plaintiff's recent CT scan, which he found showed no indications of osteomyelitis (Tr. 243).  Upon examination, Dr. Wilber found Plaintiff to be walking with a fairly normal gait and normal knee range of motion (Tr. 243).  He found his recent ankle x-rays and CT to be relatively normal in appearance, except that the x-rays

4

showed some osseous changes which could potentially represent underlying osteomyelitis (Tr. 243). Therefore, Dr. Wilber referred Plaintiff to have an MRI of his tibia, which showed no evidence of osteomyelitis (Tr. 243-44). Dr. Wilber concluded that Plaintiff probably had tibialis posterior tendonitis (Tr. 244). Because Plaintiff was not taking any medications, Dr. Wilber recommended that he take non-steroidal anti-inflammatories, prescribed Diclofenac Sodium 50 milligrams, and advised him to follow up with him on an as needed basis (Tr. 244).

Also in December 2005, Plaintiff saw Rai Drublionis, M.D., for a follow-up examination regarding his recent complaints of chest pain (Tr. 250). During that visit, Dr. Drublionis found Plaintiff's musculoskeltal and neurological examinations to be normal (Tr. 250). He found Plaintiff to have normal extremities with no edema and good pulsations and no tenderness in his calves (Tr. 250). He further found Plaintiff to have normal tone and power in his upper extremities, intact reflexes in both his upper and lower extremities, and no swelling or tenderness of his joints (Tr. 250). Dr. Drublionis made these same normal clinical examination findings at office visits in January and February 2006, except with the additional finding in January 2006 that Plaintiff was still using a cane (Tr. 248-49).

Two months after his alleged disability onset date, Dr. Drublionis examined Plaintiff and completed a Basic Medical report of the Ohio Department of Job and Family Services (Tr. 266-67). Dr. Drublionis opined that Plaintiff's sitting in an eight-hour workday was not at all affected (Tr. 267-68). Dr. Drublionis further opined that Plaintiff could stand/walk up to two hours in an eight-hour workday (one half hour at a time), occasionally lift/carry up to 10 pounds, and frequently lift/carry up to five founds

5

(Tr. 267-68). Dr. Drublionis indicated that Plaintiff had very pronounced difficulties with balance when he was walking and that he was not able to walk without a cane (Tr. 267). Dr. Drublionis further opined that Plaintiff was extremely limited in his ability to bend and with repetitive foot movements (Tr. 267). Dr. Drublionis indicated that Plaintiff could rarely or never climb, balance, stoop, crouch, kneel, and crawl and could not work around heights and moving machinery (Tr. 269). Dr. Drublionis also opined that Plaintiff could occasionally pull and push (Tr. 269). Dr. Drublionis checked off boxes on the form indicating that Plaintiff would be unemployable for 12 months or more (Tr. 267).

The next day in May 2006, Dr. Drublionis found Plaintiff's musculoskeletal and neurological examinations to be normal (Tr. 246). Regarding Plaintiff's extremities, Dr. Drublionis found Plaintiff to have weakness on his right side, but normal tone and power in his upper extremities, intact reflexes in both his upper and lower extremities, and no swelling or tenderness of his joints (Tr. 246). He advised Plaintiff to follow up as needed (Tr. 246).

In March 2007, a state agency physician, Edmond Gardner, M.D., reviewed the record and indicated that Plaintiff's internist (Dr. Drublionis) proposed severe limitations with the need for a cane, but did not provide evidence to support the limitations (Tr. 336). As such, Dr. Gardner recommended that Plaintiff undergo a consultative examination with x-rays of his right tibia to assess current findings and function (Tr. 336).

Thereafter, in late March 2007, Plaintiff saw Wilfredo M. Paras, M.D., for a consultative physical examination, at the request of the state agency (Tr. 339-45). Plaintiff reported that he had surgery to repair his fractured right tibia and fibula in 2000,

6

but had no follow-up since then because he had no medical insurance (Tr. 339). He indicated that he had a primary care physician, but only saw the doctor once every six to eight months because of his lack of medical insurance (Tr. 340). He reported that he only took over-the-counter pain medication such as Tylenol or Motrin (Tr. 339). He reported that he had pain in his right lower leg, from the knee down to his foot (Tr. 339). He reported that prolonged sitting, standing, and walking caused swelling of his right lower leg and that he used a cane for balance and to lessen the pain in his right leg (Tr. 339). As for his daily living activities, Plaintiff reported that he lived with his wife and two step children and mostly sat around elevating his right leg when sitting and watched television, puzzles, or read (Tr. 339). He also reported that he could sit for 20 to 30 minutes at a time, stand for 15 minutes at a time, and could walk up to 15 minutes at a time (Tr. 339-40). He also indicated that he avoided bending and handling of heaving objects due to right leg pain and loss of balance (Tr. 340).

Upon examination, Dr. Paras found that Plaintiff walked and moved slowly, using a non-obligatory standard cane which he held with his left hand (Tr. 340). Dr. Paras observed Plaintiff to be partial weight bearing on the right leg, full weight bearing on the left leg (Tr. 340). He found Plaintiff's extremities to have no edema, with no motor or sensory deficits, no muscle atrophy, and no muscle spasms (Tr. 340, 342). His upper body strength was good, with an average grip strength of 80 pounds with his right hand and 73 pounds with his left hand (Tr. 341). His knee, hip, and ankle strength and range of motion was reduced due to complaints of pain, but Dr. Paras noted that Plaintiff's muscle testing was not reliable (Tr. 340-41, 343-44). The tibia/fibula x-rays which Dr. Paras had ordered only showed evidence of Plaintiff's old fractures and no other

7

abnormalities (Tr. 345). Dr. Paras concluded by opining that Plaintiff's ability to perform work-related activities would be limited by his right leg pain and swelling after prolonged standing or walking and his loss of balance due to his inability to fully weight bear on his right leg due to pain (Tr. 340).

In April 2007, state agency physician, Dr. Gardner reviewed the record and opined that Plaintiff could perform light level work (i.e., occasionally lift and carry up to 20 pounds, frequently lift and carry up to 10 pounds, and stand, sit, and walk about six hours in an eight-hour workday) with only occasional balancing and climbing of ramps and stairs, but no climbing of ladders, ropes, or scaffolds and no exposure to hazards (machinery, heights, etc.) (Tr. 347-48, 350, 353). Dr. Gardner cited Dr. Paras's clinical examination findings and evidence that Plaintiff used a cane which no doctor prescribed and only took over-the-counter medications for his reports of pain (Tr. 347).

### III.  STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process. First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits.

Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits... physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent him from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

### IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ determined that Plaintiff is not disabled.  Specifically, the ALJ found that Plaintiff has the severe impairments of s/p history of right tibia fracture and obesity.  However, Plaintiff does not have an impairment or combination of impairments that meets or medically equals on the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

The ALJ ruled that Plaintiff retains the residual functional capacity ("RFC") to perform light work with restrictions.  Specifically, he can only occasionally climb, balance, stoop, bend, crouch, and crawl; he can perform jobs in which he can alternate sitting and standing throughout the day; and he should avoid heights or other hazardous conditions.

The ALJ found that considering his age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Therefore, the ALJ determined that Plaintiff is not disabled.

## V.  STANDARD OF REVIEW

This Court's review is limited to determining whether substantial evidence exists in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied. *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983). Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

## VI.  ANALYSIS

### A.  Weight afforded to physicians

Plaintiff asserts that the decision of the ALJ is not supported by substantial evidence because he failed to properly address his reasons for not assigning controlling weight to a treating physician and not discussing the opinion of a consulting physician.

Regardless of its source, an ALJ is required to evaluate every medical opinion received into the record. 20 C.F.R. § 404.1527(d) and § 416.927(d). When deciding the weight to give any physician's opinion, the following factors are considered: (1) whether

10

the physician actually examined the patient; (2) whether a treatment relationship existed between the physician and patient; (3) whether the opinion is supported by, and is consistent with other medical evidence in the record; (4) whether the physician making the opinion is a specialist.  *Id.*

Generally, "the opinions of treating physicians are entitled to controlling weight." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 540 (internal citation omitted).  However, the "opinion of a treating physician is entitled to greater weight only if it is based on objective medical findings and is not contradicted by substantial evidence to the contrary.  The Commissioner may reject the opinion of a treating physician where good reasons are found to do so in the record."  *Hare v. Comm'r of Soc. Sec.*, 37 Fed. Appx. 773, 776 (6th Cir. 2002).  Good reasons to discount a treating physician's opinion can be: (1) it is not supported by medically acceptable clinical and laboratory diagnostic techniques, (2) it is inconsistent with substantial evidence in the record, (3) it does not identify the evidence supporting its finding, and (4) if it fares poorly when applying the factors listed in 20 C.F.R. § 416.927(d)(2).  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004).

In the instant action, Plaintiff asserts that the ALJ did not assign proper weight to treating physician, Dr. Drublionis.  Dr. Drublionis opined that: Plaintiff could lift up to five pounds frequently and ten pounds occasionally; Plaintiff could walk only 2 hours of 8 hour day and stand or walk only half an hour at a time; Plaintiff could rarely or never climb, balance, stoop, crouch, kneel, or crawl; and that Plaintiff could only occasionally push or pull (Tr. 268-69).

The ALJ does not provide specific reasons for rejecting the majority of functional

11

limitations set forth by Dr. Drublionis.  Instead, the ALJ states that he concurs with Dr. Drublionis's opinion that Plaintiff's "weight and lower extremity pain could cause poor balance and therefore has the option to alternate sitting and standing, as well as avoiding heights and dangerous machinery" but does not address the rest of Dr. Drublionis's opinion in any way (Tr. 14).  The ALJ fails to cite any evidence in the record that demonstrates that Dr. Drublionis's opinion is inconsistent with other medical evidence and, thus, fails to provide "good reasons."  *See Wilson*, 378 F.3d at 544 (citing Soc. Sec. Rule 96-2p) (the ALJ must provide "specific reasons for the weight given to a treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.")

The Commissioner argues that Dr. Drublionis practices internal medicine and treated Plaintiff's general conditions.  While this may be a sufficient reason for rejecting Dr. Drublionis's opinion, the ALJ failed to cite such evidence in support.  The Commissioner's *post hoc* arguments in support of the ALJ's decision are immaterial.  The Sixth Circuit has expressly held that where the ALJ fails to give good reasons for his rejection of a treating source's opinion, remand is required even if substantial evidence in the record otherwise supports the ALJ's decision. *Wilson*, 378 F.3d at 544.

The Commissioner also appears to argue that the ALJ committed harmless error because there is evidence that Plaintiff can perform a significant number of jobs in the national economy even using the limitations of Dr. Drublionis.  The Commissioner maintains that the VE identified 37,000 sedentary jobs in the national economy that a

12

person with Plaintiff's background, experience, and RFC could perform.  The Commissioner asserts that Dr. Drublionis essentially opined that Plaintiff is limited to sedentary work and, thus, adopting his limitations would not impact the ALJ's finding that Plaintiff could perform a significant number of jobs.

> Sedentary work is defined as work involving
>
>  . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).  While many of the limitations cited by Dr. Drublionis are addressed by this definition of sedentary work, it fails to address other limitations - specifically that Plaintiff could rarely or never climb, balance, stoop, crouch, kneel, or crawl; and that Plaintiff could only occasionally push or pull.  Thus, it is unclear whether Plaintiff could actually perform the sedentary jobs identified by the VE.  As such, the failure of the ALJ to state reasons in support of his decision to assign less weight to Dr. Drublionis does not amount to harmless error and is reason to remand.

Plaintiff also asserts that the ALJ completely ignored the findings and opinions of consulting physician, Dr. Paras.  Specifically, Plaintiff claims that the ALJ failed to consider and assess weight to Dr. Paras's opinion that Plaintiff is limited in work-related physical activities due to chronic pain and swelling and plaintiff experiences loss of balance due to inability to put full weight on his right leg due to pain.

The Commissioner asserts that the ALJ "explicitly referenced" Dr. Paras's findings.  The only mention in the ALJ's determination of Dr. Paras's findings and opinion was a reference to the exhibit number (10F) of Dr. Paras's report: "In sum, the

above residual functional capacity assessment is supported by the evidence in the record. (Exhibits 1F-7F, 10F, and 11F)." (Tr. 14.)  The ALJ did not mention Dr. Paras by name or discuss any of the evidence or opinions contained in his report.

An ALJ is required to determine the weight that should be accorded to a medical opinion, including consulting opinions by considering: whether the source examined the claimant; the treatment relationship, as discussed above; the supportability of the opinion; the consistency of the opinion with the evidence in the record; and the specialization of the source. 20 C.F.R. §§ 404.1527(d)(4), 416 .927(d)(4).   In the instant case, no evidence exists that the ALJ properly determined the weight afforded to Dr. Paras' opinion and, thus, the ALJ's determination on this matter is essentially unreviewable.

In his brief, the Commissioner attempts to justify the ALJ's rejection of  Dr. Paras's opinion; however, such a recitation is purely conjecture upon the part of counsel and cannot serve as the basis for review by a court.  *See Watford v. Massanari*, No. 1:00 CV 00004, p. 13 (N.D. Ohio April 24, 2001); *see also National Labor Relations Board v. Kentucky River Community Care, Inc.*, 532 U.S. 706, 715 n. 1 (2001) (counsel's *post hoc* rationalizations are not substituted for the reasons supplied by the administration); *Securities and Exchange Comm'n v. Federal Water & Gas Corp.*, 332 U.S. 194, 196 (1947) ("a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency."); *Municipal Resale Serv. Customers v. Federal Energy Regulatory Comm'n*, 43 F.3d 1046, 1052 (6th Cir. 1995) (same); *Amoco Prod. Co. v. National Labor Relations Bd.*, 613 F.2d 107, 111 (5th Cir.

1980) (same and citing cases); *Sparks v. Bowen*, 807 F.2d 616, 617 (7th Cir. 1986) (in social security review, court must evaluate the reasons set forth by the ALJ).

The ALJ's failure to fully articulate his reasons for rejecting both Drs. Drublionis's and Paras's opinions deprives this Court of the ability to conduct any meaningful review. *See Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) ( "we cannot uphold a decision by an administrative agency . . . if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result."); *Wilson v. Comm. of Soc. Sec.*, 378 F.3d 541, 544-546 (6th Cir. 2004) (finding it was not harmless error for the ALJ to fail to make sufficiently clear why he rejected the treating physician's opinion, even if substantial evidence not mentioned by the ALJ may have existed to support the ultimate decision to reject the treating physician's opinion).  Therefore, his opinion must be vacated.

**B.    Plaintiff's Pain Allegations**

Plaintiff also asserts that the ALJ's determination that Plaintiff is not disabled by his pain is not supported by substantial evidence.  However, resolution of this issue may depend on the weight assigned to the opinions of Drs. Drublionis and Paras.  Therefore, the ALJ shall reconsider this issue upon remand.

## VII.  DECISION

For the foregoing reasons, the Court finds the decision of the Commissioner is VACATED and REMANDED  and judgment is entered in favor of the plaintiff.

**IT IS SO ORDERED.**


Date:  July 30, 2010                                                              s/ *Nancy A. Vecchiarelli*
                                                                                              U.S. Magistrate Judge